

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

No. 20-266

---

UNITED STATES OF AMERICA,


v.


MICHAEL TALBERT,


Defendant

---

## MEMORANDUM OPINION

---

**J. Nicholas Ranjan, United States District Judge**

A grand jury indicted Michael Talbert and 12 co-defendants for conspiring to distribute and possess with the intent to distribute five kilograms or more of cocaine. If convicted, Mr. Talbert faces at least 10 years imprisonment, and so there exists a rebuttable presumption that Mr. Talbert must remain detained pending trial. The Magistrate Judge ordered Mr. Talbert to be released pending trial, finding that he had overcome this presumption, and the other factors under the Bail Reform Act warranted release. The government has now sought *de novo* reconsideration of the Magistrate Judge's decision from this Court.

After carefully considering the Magistrate Judge's decision and the competing evidence and argument, the

- 1 -

Court finds that Mr. Talbert has not met his burden of production. Specifically, he has presented no evidence to rebut the presumption that he is a danger to the community, *i.e.*, that conditions of release such as those imposed by the Magistrate Judge would prevent him from committing more crimes similar to those with which he is charged. Indeed, the evidence is to the contrary—Mr. Talbert is charged with conduct that occurred while he was on supervised release for a previous serious federal drug-trafficking crime.

Thus, considering the presumption in favor of detention, the Bail Reform Act factors, and the evidence presented at the detention hearing before the Magistrate Judge, the Court finds that Mr. Talbert is a danger to the community and that no combination of conditions will reasonably assure the safety of the community if he is not detained until trial. The Court will grant the government's motion.

## BACKGROUND

On September 22, 2020, a federal grand jury in the Western District of Pennsylvania returned an Indictment charging Mr. Talbert and 12 of his co-defendants with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine from in and around March of 2019 through in and around September of 2020, contrary to the provisions of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and in violation of 21 U.S.C. § 846. [ECF 3].

On September 30, 2020, the Magistrate Judge presided over Mr. Talbert's detention hearing. During the hearing, Drug Enforcement Administration Task Force Officer and City of Pittsburgh Police Detective Michael A. Molitaris testified that Mr. Talbert was a member of a drug-trafficking organization that operated throughout the Western District of Pennsylvania; Columbus, Ohio; Gettysburg, Pennsylvania; Orlando, Florida; and Puerto Rico. [ECF 128, at pp. 13-14].

The investigation into the drug-trafficking organization included approximately nine months of Title III wiretaps. [*Id*. at p. 14]. Those wiretaps commenced

around December 2019, and Mr. Talbert was a target interceptee. [*Id.* at pp. 14, 17].  During this time and until late August 2020, Mr. Talbert was on supervised release for a prior federal drug-trafficking conviction and sentence.[1]  [*Id.* at p. 23]; *see also* 9/30/20 Pre-Trial Services Report, at p. 6.

On September 28, 2020, members of law enforcement executed a search warrant at Mr. Talbert's residence, located at 1201 Roemer Street in Farrell, Pennsylvania. [ECF 128, at p. 14].  Investigators located Mr. Talbert in a bedroom in the residence. [*Id.* at p. 15]. Investigators also located Mr. Talbert's fiancée, Misty Chambers, and a minor child inside the residence. [*Id.*] From Mr. Talbert's bedroom, investigators recovered a loaded handgun from on top of the nightstand next to his bed. [*Id.*] Investigators also recovered another loaded handgun from the dresser inside of Mr. Talbert's bedroom. [*Id.*] Throughout Mr. Talbert's residence, investigators recovered a box of ammunition, a bottle of Inositol (which is an agent used to cut cocaine), and distribution quantities of marijuana. [*Id.*]

Mr. Talbert proffered evidence during the hearing that established strong family roots and steady employment.  Specifically, through his counsel, Mr. Talbert proffered that he was currently employed at the Hermitage Hot Dog Hut and would be allowed to return to work if released. [*Id.* at p. 20.] He noted his strong family ties in

---

[1] In his brief, Mr. Talbert emphasizes that his term of supervised release ended on August 23, 2020, and he was fully compliant during his entire 5-year term of supervised release.  The evidence at the detention hearing though was that Mr. Talbert was engaging in the instant criminal activity while on supervised release, given that agents intercepted his communications at some point between December 2019 and August 2020.  Furthermore, the indictment alleges that the conspiracy occurred from around March 2020 through September 2020—a time period that largely encompasses Mr. Talbert's time on supervised release. The U.S. Probation Office confirmed as much in its pre-trial services report, where it stated that the "instant federal offense occurred while on federal supervision at Case No. 0315 2:11CR00151."

the area, including his long-time fiancée, his children, and his elderly father for whom he primarily provides care. [*Id.* at p. 20.]   In order to rebut the presumption of detention, Mr. Talbert's counsel argued, "Our argument would be that Mr. Talbert has sufficient family ties to the Farrell area where he's been a lifetime resident. He has existing employment. And that those would be sufficient evidence to overcome the presumption of either flight or danger to the community." [*Id.* at p. 23.]

At the conclusion of the hearing, notwithstanding the presumption of detention, the Magistrate Judge ordered Mr. Talbert's release on unsecured bond (with non-monetary conditions of release to include location monitoring) to the custody of Misty Chambers at 1201 Roemer Street.

With respect to the factors under the Bail Reform Act, the Magistrate Judge first determined that the charges in this case were "serious." [*Id.* at p. 25.]

As to the weight of the evidence, the Magistrate Judge noted that while there were nine months of wiretaps, the government had not produced evidence of how many of those wiretaps involved Mr. Talbert.   Further, while marijuana and handguns were found in Mr. Talbert's home, the charges relate to cocaine—and no cocaine was found in his residence. [*Id.*].

As to Mr. Talbert's characteristics, the Magistrate Judge found that he had a prior federal drug conviction, and was on supervised release during the present offense, but otherwise didn't have an extensive criminal history and had no prior instances where he failed to appear in court.   Moreover, the Magistrate Judge noted Mr. Talbert's family ties to the community and his steady employment as positives. [*Id.* at pp. 25-26].

In the end, the Magistrate Judge found that Mr. Talbert was not a flight risk, but that "community safety is my issue."   She ultimately concluded that because there was not "any evidence that you were dealing drugs out of your home," release was warranted, and she ordered Mr.

Talbert to be released to his home, on home detention and location monitoring. [*Id*. at p. 26].[2]

The government immediately requested a stay of the release order, which the Magistrate Judge granted until October 1, 2020 at 5:00 p.m. The Government then filed a motion for revocation with this Court on October 1, 2020. [ECF No. 129.] The same day, this Court extended the Magistrate Judge's stay, and ordered expedited briefing on the motion for revocation.  Both parties filed briefs, and the motion is now ready for disposition.

## LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3145(a), provides that:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court— (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.

The Third Circuit has held that the standard of review for a motion for revocation before a district court is *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). At the district-court level, *de novo* review does not require an additional or independent evidentiary hearing by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits. *See United States v. Chagra*, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (Diamond, J.). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).

---

[2] This was consistent with the recommendation of the pre-trial services report issued by the U.S. Probation Office, which recommended Mr. Talbert's release.

There is a presumption of detention in cases, such as this one, where the defendant is charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed by the Controlled Substances Act (21 U.S.C. §§ 801-904), if "the judicial officer finds that there is probable cause to believe that the person committed" the offense. 18 U.S.C. § 3142(e)(3). (Here, there is no dispute that probable cause exists, which the Magistrate Judge at least implicitly found, and Mr. Talbert does not challenge).

A defendant may rebut the presumption by presenting "some credible evidence" to support "his contention that he will appear and will not pose a threat to the community" if released. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (citation omitted). Production of evidence relating to character, family ties, employment, and length of residence in the community may, in some circumstances, rebut the presumption that a defendant poses a danger to the community. *Id*. at 561.

"To this end, the Court should consider the four factors listed [in 18 U.S.C. § 3142(g)], and if at the end of this analysis, Defendant rebuts the presumption, the burden shifts back to the Government to prove Defendant poses a threat of flight and a threat of dangerousness to the community." *United States v. Wooley*, Crim. No. 11-158, 2012 WL 3245472, at *2 (W.D. Pa. Aug. 7, 2012) (Schwab, J.) (citing *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)).

The Court considers these familiar four factors of Section 3142(g) in determining whether a defendant should be detained pending trial:

(1) the nature and circumstances of the offense;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including his character, family, employment, finances, length of residence, ties to community, drug abuse history, criminal history, record of appearance at

court proceedings, and whether he was on bond at the time of the charged offense; and

(4) the nature and seriousness of the danger posed by the person's release.

Based on a consideration of the Section 3142(g) factors, on a *de novo* review, and as discussed below, the Court finds that Mr. Talbert has failed to meet his burden of production to overcome the presumption of detention. The Section 3142(g) factors, on a whole, show that Mr. Talbert's release poses a threat to the community.

## <u>DISCUSSION & ANALYSIS</u>

The threshold question here is whether Mr. Talbert has produced credible evidence to rebut the presumption of detention.

There is no question that Mr. Talbert presented evidence that he is not a flight risk. His local family ties and steady employment are clear evidence of that. But he produced no evidence as to his danger to the community. To be sure, sometimes family ties and employment can serve the dual purpose of showing both absence of flight and danger. Not here. Mr. Talbert committed his instant serious crimes ***while*** residing at home with his family and while employed. Moreover, he committed those crimes while on federal supervised release from a previous drug-trafficking offense—demonstrating to the Court that imposing similar conditions of release now would not be enough to deter Mr. Talbert from engaging in criminal behavior that poses a serious danger to the community.

True, Mr. Talbert's burden of production is relatively "light." But it's also not non-existent. He must produce ***some*** evidence that his release will not lead to danger. Based on the 3143(g) factors below, Mr. Talbert simply has not met his burden.

## I.     Nature and circumstances of the offense.

There is no dispute that Mr. Talbert's charges, standing alone, are serious—which is why Congress mandated a presumption of detention. Mr. Talbert is facing a potential mandatory minimum prison sentence of

- 7 -

10 years (possibly, 15 years). *See United States v. Terron*, No. 18-413, 2020 WL 2404618, at *2 (M.D. Pa. May 12, 2020) ("[T]he Court finds that the offenses alleged against Terron are very serious drug charges which carry with them significant penalties. This factor weighs heavily in favor of Detention.").

Moreover, when agents searched Mr. Talbert's home, they found two loaded firearms and ammunition—a circumstance surrounding the incident that reflects a degree of danger. *See United States v. Gonzalez*, 675 F. Supp. 208, 210 (D.N.J. 1987) ("The court would add, however, that the circumstances surrounding the arrest of defendant Hernandez, which include the discovery of two fully loaded automatic weapons at that defendant's residence, are also relevant to the court's determination.").

## II.    Weight of the evidence.

At the detention hearing, the government did not present much evidence as to the weight of the evidence, such as the specific wiretaps involving Mr. Talbert.  But the agent did confirm that Mr. Talbert was one of the target interceptees on the wiretaps.  [ECF 128, at p. 14].  Mr. Talbert, for his part, provided no affirmative evidence suggesting that the government's evidence was suspect as against him.  That the evidence against Mr. Talbert was strong enough to make him the target of the government's wiretap investigation weighs somewhat in favor of (or at least does not cut against the presumption of) detention.

## III.   History and characteristics of the defendant.

Mr. Talbert's evidence at the detention hearing consisted of demonstrating his family and community ties, as well as his steady employment.  The Court finds that this evidence is relevant to demonstrate he is not a flight risk.  But it stops short of suggesting that he is not a danger, because Mr. Talbert committed the alleged crimes while residing at his home with his family, and while employed at the hot dog shop.  Indeed, the Magistrate Judge's release order will send him back to his same family and employment situation in which he committed his criminal conduct.  Thus, the Court finds that this is not credible evidence as to lack of danger to the community, at

least in this context of this case. *Cf. United States v. Rosa-Robles*, No. 19-380, at p. 9 (W.D. Pa. 2020) (Ranjan, J.) ("While '[p]roduction of evidence relating to character, family ties, employment, and length of residence in the community may rebut the presumption that he poses a danger to the community,' *Carbone*, 793 F.2d at 561, the evidence produced by Mr. Rosa-Robles isn't the type of credible evidence that would support a finding that he will not pose a risk of harm. This is so because he engaged in the criminal conduct at issue while on parole, while living with that common-law wife, and while engaging in lawful truck-driving employment.").

Additionally, and perhaps most significantly, Mr. Talbert committed the instant offenses while on supervised release for a prior federal drug-trafficking crime. This is an important factor that the Court must consider in examining the defendant's history and characteristics. *See* 18 U.S.C.§ 3142(g) (court to consider "the history and characteristics of the person, including. . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law"). Indeed, the Court finds this fact to be particularly troubling, and to weigh heavily  in favor of detention, because it is the strongest possible evidence that supervisory conditions, like probation or home detention, will not reasonably assure that Mr. Talbert will refrain from further drug trafficking if he is released. *See United States v. Thomas*, No. 15-249, 2016 WL 890583, at *7 (W.D. Pa. Mar. 9, 2016) (Fischer, J.) (finding that the fact that the "Defendant was on supervised release for the drug trafficking offense at 08-cr-374" counseled in favor of detention).

## IV.    Nature and seriousness of the danger posed.

Finally, as noted above, the charges here are serious. Drug trafficking, on its own, presents a risk of danger to the community. "The statutory language as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). *See also United States v. Rice*, No. CR 17-1450, 2017 WL 6349372, at *7

(W.D. Pa. Dec. 13, 2017) (Conti, J.) ("Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. *United States v. Perry*, 788 F.2d 100, 111 (3d Cir. 1986).").

Further, as discussed, the seriousness of the danger is heightened by the fact that (1) Mr. Talbert allegedly committed his present crimes while on supervised release; and (2) loaded firearms were found in his residence.  Worse, as evidenced by his past drug-trafficking conviction, this is not Mr. Talbert's first substantial federal drug-trafficking crime, and yet he allegedly persisted in committing drug-trafficking crimes while under court supervision. This is a strong indication that even significant deterrents short of pre-trial detention are not enough to protect the public from Mr. Talbert committing more crimes.

In sum, weighing all the statutory factors, the Court finds that Mr. Talbert has failed to present any credible evidence bearing on his danger to the community.  As a result, he has not overcome the presumption of detention. The Court will order him to be detained pending trial.[3]

---

[3] Even assuming Mr. Talbert had met his burden of production, the Court nonetheless finds that the evidence submitted by the government sufficiently establishes by clear and convincing proof that Mr. Talbert is a danger to the community and there is no combination of conditions that can reasonably avoid that danger.  By the Court's estimation, the government primarily meets this burden through evidence of the seriousness of the offenses, the existence of the loaded firearms, and the fact that the crimes were committed while Mr. Talbert was on supervised release.  Indeed, had the government brought the present indictment a month earlier, it would have likely led to a supervised-release petition for which Mr. Talbert may have well been detained with no bond.

## <u>**CONCLUSION**</u>

For the foregoing reasons, the Court will grant the government's motion for revocation, revoke the release order, and order Mr. Talbert to be detained pending trial.

DATED this 13th day of October, 2020.

BY THE COURT:


*/s/ J. Nicholas Ranjan*
United States District Judge